## Case No. 11,357.

**POWELL et al. v. MONSON & BRIMFIELD MANUF'G CO.**

[3 Mason, 459.][1]

Circuit Court, D. Massachusetts. Oct. Term, 1824.

DOWER—MORTGAGED ESTATE—IMPROVEMENTS.

1. Dower is assignable of real estate, mortgaged by the husband after the marriage without the wife's joining in the deed, and subsequently aliened by him, but in the meantime improvements made thereon by him, according to the value at the time of the alienation including the improvements. A mortgage is not an alienation so as to preclude dower from attaching to such improvements.

2. The main mill-wheel and gearing of a factory, attached to the factory and necessary for its operation, are fixtures, and real estate, to which the right of dower attaches.

[Cited in Dudley v. Hurst (Md.) 8 Atl. 903; Freeman v. Lynch, 8 Neb. 196; Gray v. Holdship, 17 Serg. & R. 418; Hancock v. Jordan, 7 Ala. 448; Parsons v. Copeland, 38 Me. 544; Strickland v. Parker, 54 Me. 265; Winslow v. Merchants' Ins. Co., 4 Metc. (Mass.) 314.]

[This was a bill in equity by Ellick Powell and Elizabeth, his wife, against the Monson & Brimfield Manufacturing Company.]

The commissioners appointed to assign dower according to the interlocutory decree

---

[1] [Reported by William P. Mason, Esq.]

of the court [Case No. 11,356], having made a report of their doings, the cause came on again for argument upon the question of confirming that report. Two exceptions were taken to it by the defendants; first, that the commissioners had decided, that the mortgage of Roswell Merrick (the husband of the dowress) to Rufus Flint, of the 21st of October, 1808, in the pleadings mentioned, was not an alienation by the husband, so as to affect the right of his wife to dower. Secondly, that in estimating the value of the property and the income thereof, the commissioners considered the water-wheel and the main gearing of the factory or mill as real estate.

These points were argued by Mr. Prescott, for defendants, and by Mr. Blake, for plaintiffs.

On the first point, the defendants' counsel contended, that by the foreclosure the mortgage became, by relation, a complete alienation from its date; that the claim of dower arises from the seisin of the husband, which, as to the mortgagee and his assigns, did not exist after October, 1808. He cited 15 Mass. 278; 7 Mass. 138; 6 Mass. 53; 1 Brown, Ch. 326; 2 Schoales & L. 388; 5 Johns. Ch. 454; Co. Litt. § 32a, and note, 193; Id. § 36; 9 Mass. 8, 221.

On the second point, he contended, that the wheel and gearing were not to be considered as fixtures; but were to be deemed entitled to as favourable a construction, as is allowed between landlord and tenant. He cited 3 Esp. 11; Bull. N. P. 34; 2 East, 88; 3 Atk. 13; 2 Johns. 418; 7 Mass. 432; 17 Johns. 116; 3 East, 38; 6 Johns. 5; 14 Mass. 352; 20 Johns. 29.

For the plaintiff, e contra, the argument of the defendants was on both points denied; and on the first was cited St. Mass. 1783, c. 37; 2 Bl. Comm. 128, 157; Pow. Mortg. 248; Shep. Touch. 117; Caines, Cas. 67; 11 Johns. 538; 4 Johns. 42; 12 Mass. 388; 7 Johns. 388; 17 Mass. 566; 11 Mass. 12, 473; 16 Mass. 346; 1 H. Bl. 119; 1 Pick. 88; 3 Atk. 244; Doug. 21, 438; 2 Burrows, 978; 1 Mass. 473; 4 Johns. 42, 538.

On the second point was cited 3 Dane, Abr. 147, 152, 153.

STORY, Circuit Justice. In October, 1808, Roswell Merrick mortgaged the estate in controversy to Rufus Flint. Subsequently, in 1812, he made such an alienation as completely to part with his estate in the equity, so far as dower is concerned. In the intermediate time he made great improvements on the estate, the dower in which is claimed, and forms the present subject of contestation. He died in 1819; and afterwards, in April, 1820, Rufus Flint took possession of the mortgaged premises under process of law; and his interest therein by mesne conveyances has since come to the Brimfield Manufacturing Company.

The first exception presents the question, whether the mortgage constitutes such an alienation of the husband, as by law estops the right of dower in any subsequent improvements made by the husband upon the estate before an entry or foreclosure under the mortgage. I say in improvements by the husband, for the point does not arise as to improvements made by the mortgagee. This question must be settled by the local law of Massachusetts, although material lights may be borrowed from other sources to illustrate the doctrines of the common law, so far as they have been adopted here.

It is very clear, that at common law a widow is not entitled to dower in any equity of redemption belonging to her husband during the coverture. This doctrine resulted from the principle, that, by the mortgage, the whole legal estate and seisin were gone from her husband, and that dower could not arise, except in cases, where the husband had a legal seisin of the estate at some time during the coverture. Co. Litt. 31–33; Id. § 36. Courts of equity in this respect followed the rule at law, and refused to create an equitable title to dower, where a legal title was denied to exist. Dixon v. Saville, 1 Brown, Ch. 325; D'Arcy v. Blake, 2 Schoales & L. 387; Titus v. Neilson, 5 Johns. Ch. 453, 454. But this has always been considered a hard and harsh rule, and against the general spirit prevailing in the construction of mortgages. In the state of New York an early struggle commenced, and the doctrine finally prevailed, that, at law, the mortgagor in possession was to be considered as seised at law of the estate for all purposes, except as against the mortgagee and those claiming under him; and, that his wife was dowable of an equity of redemption in fee. Titus v. Neilson, supra, and cases there cited. The same doctrine has been successfully and conclusively established in Massachusetts. The mortgagor is here considered as the real owner in seisin of the estate against all persons but the mortgagee and persons claiming under him. If disseised by a stranger he may maintain a writ of entry sur disseisin; and a purchaser of the equity either from him, or under an execution, acquires a like legal seisin, and may maintain a like writ. Groton v. Roxborough, 6 Mass. 50; Willington v. Gale, 7 Mass. 138; Goodwin v. Richardson, 11 Mass. 469; Wilder v. Houghton, 1 Pick. 88. The very point, that a widow is dowable of an equity of redemption against every person not claiming under a prior mortgage, was decided in Snow v. Stevens, 15 Mass. 278, and was subsequently recognised in Barker v. Parker, 17 Mass. 564. The latter case was a very strong application of the doctrine, for the wife had joined in the mortgage, and afterwards the husband's equity was sold by process of law, and before the purchaser had redeemed, the mortgage was discharged by a third person; and it was held, that the wife was thereby let in to dower against the

purchaser of the equity. See Hildreth v. Jones, 13 Mass. 525; Bolton v. Ballard, Id. 227; Snow v. Stevens, 15 Mass. 278.

The present, however, is not the case of a widow claiming dower of an equity of redemption. Her husband was seised of the estate during the coverture, and afterwards mortgaged the estate to Flint, in which she did not join. She is of course, as has been already decided, entitled to dower in the premises; and the question is as to the improvements made after the mortgage. As against the heirs of her husband she would unquestionably be dowable of the improvements, or she would be dowable even of improvements made by the heir himself. If the mortgage had been redeemed, she would have been so entitled. See Hildreth v. Jones, 13 Mass. 525; Bolton v. Ballard, Id. 227; Snow v. Stevens, 15 Mass. 278. What reason is there, why she should not be entitled as against the mortgagee? The improvements were not made by him; and he has therefore no equity in that respect. If it be said, that the improvements, being made after the mortgage, attached to the estate of the mortgagee for his benefit; it may with as much truth be stated, that the wife also had an inchoate right of dower, to which as an accruing benefit they ought to attach. But I put the case upon this, that here there was not, in the sense of our law, an absolute alienation of the estate by the husband, until after these improvements were made. A mortgage is not an absolute alienation. In Goodwin v. Richardson, 11 Mass. 469, 473, the court said, that "the foreclosure (of a mortgage) operates as a new purchase by the mortgagee." See, also, Ex parte Quincy, 1 Atk. 477. If by such foreclosure the title is to be considered as relating back to the time of the original mortgage, it is so in a limited extent, and not to cut out the rights of third persons. And it would require great consideration, before it could be decided, that, if after the foreclosure the title to the estate had failed by an ouster under a superior title, the mortgagee, upon the covenants of warranty in the mortgage, could have recovered damages to the full value of the improvements made afterwards by the mortgagor.

There is no case, in which it has been held, that the widow is excluded from dower in improvements, unless made by a purchaser after an alienation. The court is now called upon to go beyond that exception without any peculiar equity to justify it. I cannot but consider, that all the improvements made by the husband are to be considered as made for the benefit of the estate, and of all persons having an interest therein and according to such interest. These improvements were annexed to the freehold, and became a part of it to all intents and purposes. If a recovery had been had under a superior title, they would have passed to the recoverer. The title of the dowress is superior to that of the mortgagee in the premises; and I know of no rule of law, that restrains her from taking her third part of the freehold with all the improvements on it antecedent to the alienation of the husband in 1812. The same point came before my learned friend, Mr. Chancellor Kent, in Hale v. James, 6 Johns. Ch. 258, and was by his cautious judgment decided in the same way; and I derive no small confirmation of my opinion from finding it coincide with his. The report of the commissioners on this point must be confirmed.

The other exception presents the question, whether the water-wheel and mill-gearing of the factory, without which it cannot be put in operation, are fixtures annexed to the freehold, and so real estate, or are to be deemed mere personalty. The general rule undoubtedly is, that whatever is once annexed to the freehold becomes parcel thereof, and cannot be afterwards severed but by him, who is entitled to the inheritance. Therefore it is laid down in Co. Litt. 53a, that if glass windows, though glazed by the tenant himself, be broken down or carried away, it is waste, for the glass is part of the house. And so it is of wainscot, benches, doors, windows, furnaces, and the like annexed or fixed to the house, either by him in the reversion or the tenant. The same doctrine is laid down by Lord Coke in the close of Herlakenden's Case, 4 Coke, 63, where he refers to a case, then recently decided, in which it was held, that waste might be committed in glass annexed to windows, for it is parcel of the inheritance, and shall descend, as such, to the heir, and the executors shall not have them; and although the lessee himself, at his own costs, put the glass into the windows, yet being once parcel of the house, he could not take it away or waste it. It was likewise then resolved, that wainscot, be it annexed to the house by the lessor or lessee, is parcel of the house; and there is no difference in law if it be fastened by great nails or little nails, or by screws or irons put through the post or walls. The like was adjudged in Cooke's Case, Moore, 177, where a tenant took away doors and cheek posts of a house, which he had added during his tenancy. Indeed, the doctrine is to be found in the Year Books. In 17 Edw. II. 518, it was held waste for a tenant to pull down a house erected by him during the term. In 20 Hen. VII. 13b, and 21 Hen. VII. 26b, 27a (which I incline to think different reports of the same case), it was decided, that a furnace erected by the ancestor in his house was parcel of the inheritance, and passed to the heir and not to the executor; and that the same rule would apply, where the ancestor had fixed vats in a brew-house or dye-house. Kingsmil, J., on that occasion said, that after it was once fixed to the freehold, it was incident to the freehold, so that it was parcel thereof, and would go and pass at all times with the freehold. This doctrine is fully recognised by Lord Chief Baron Comyns in his

Digest (Biens, B.), who lays it down (which is very applicable to the present case), that mill-stones, fixed to a mill, belong to the heir and not to the executor. It is also recognised by the Lord Chancellor in Cave v. Cave, 2 Vern. 508; and by Lord Mansfield in Lawton v. Salmon, 1 H. Bl. 259, note, who applied it in favour of the heir as to salt-pans, which were fixed in salt-works by the ancestor, and fastened by mortar to a brick floor. Indeed, as between heir and executor the rule has never been relaxed, unless the case of the cider-mill, cited in Lawton v. Lawton, 3 Atk. 13, is an exception, which may, perhaps, as the note there suggests, have turned upon a custom, or as Lord Ellenborough, in Elwes v. Maw, 3 East, 38, considers it, may be deemed a mixed case between enjoying the profits of land and carrying on a species of trade.

In modern times a relaxation has, indeed, taken place in cases between tenant for life and remainder-man, and still more favourably in cases between landlord and tenant for the benefit of trade. The authorities are most ably summed up and commented on by Lord Ellenborough, in Elwes v. Maw, 3 East, 38; and it would be a useless labour to review them. See, also, Shep. Touch. 470; 3 Dane, Abr. 147, 153; Woodf. Landl. & Ten. c. 9, § 1; Bull. N. P. 34; Toll. Ex'rs, bk. 2, c. 4, § 2; Holmes v. Tremper, 20 Johns. 29; Lawton v. Lawton, 3 Atk. 13; Dudley v. Warde, 1 Amb. 113; Beck v. Rebow, 1 P. Wms. 94; Ex parte Quincy, 1 Atk. 477; Penton v. Robart, 2 East, 88; Poole's Case, 1 Salk. 368; Lee v. Risdon, 7 Taunt. 188; Butler's note 34b to Co. Litt. 53. In that case the court decided, whether rightly or not I am not called upon to decide, that the relaxation as between landlord and tenant was confined to erections for the benefit of trade, and did not extend to those for agricultural purposes.

It is the less necessary to consider the nature and extent of these exceptions, because they steer wide of the present case, and all proceed upon the ground, that such fixtures are annexed to the freehold, and would, under the general rule, form a parcel of the inheritance. See Lee v. Risdon, 7 Taunt. 188. In Lawton v. Salmon, 1 H. Bl. 259, note, Lord Mansfield, with reference to the salt-pans, said, "that the salt spring is a valuable inheritance, but no profit arises, unless there is a salt-work, which consists of a building, &c., for the purpose of containing the pans, &c., which are fixed to the ground. The inheritance cannot be enjoyed without them. They are accessaries, necessary to the enjoyment and use of the principal. The owner erected them for the benefit of the inheritance." Every word here used is equally applicable to the case now before the court. The water-wheel and gearing are necessary for the use of the factory. They were placed there by Merrick, when owner, for the purpose of being used as parcel of the factory. The mill could not operate without them. They were never disannexed by Merrick. They passed, or might have passed by the alienation of Merrick, as parcel of the factory mill. That has not been, as I recollect, directly denied; and if denied, it is clearly well founded in law. The citation from Comyn's Digest, already made, shows it. In Shep. Touch. 90, it is laid down, that "that, which is parcel or of the essence of a thing, albeit at the time of the grant it be actually severed from it, does pass by the grant of the thing itself. And therefore by the grant of a mill, the mill-stone doth pass, albeit at the time of the grant it be actually severed from the mill. So by the grant of a house, the doors, windows, locks and keys do pass, as parcel thereof, albeit at the time of the grant they be actually severed from it." See, also, Colegrave v. Dias Santos, 2 Barn. & C. 76; Union Bank v. Emerson, 15 Mass. 159. These are stronger cases, than the present, for here there was no severance at any time before the dower absolutely attached to the estate. Fixtures of this nature pass also, as parcel of the inheritance, under a levy by execution. This was so held in conformity to the rule of the common law in Goddard v. Chace, 7 Mass. 432. Nor is there any thing in Gale v. Ward, 14 Mass. 352, which interferes with its authority; for the machines there described were not, strictly speaking, fixtures. The same answer may be given to Cresson v. Stout, 17 Johns. 117.

Upon the plain principles of the common law, then, the water-wheel and its gearing were fixtures annexed to the freehold. They were necessary to the beneficial use of the factory, and could not be removed without prejudice to it. They were so annexed, not by a tenant for life or for years, or for a limited purpose, but by the owner for the permanent enjoyment of the inheritance. They would have passed as appurtenances or incidents to the heir by descent, to a purchaser by sale, and to an execution creditor, who should levy on the estate, as parcel of the factory. Nothing has been done to disannex them from the freehold. I cannot therefore perceive any ground, upon which the court can declare them not to be parcel of the inheritance for the purpose of dower. Against the heir they would clearly be parcel, and I think they must be so as to purchasers. They do not fall within any exception, in favour of which the ancient rule of law has been relaxed.

I was desirous of having somewhat more full knowledge of the nature and position of the water-wheel and gearing, than the report furnished; and the information has been furnished by the intelligent gentleman whose statement has been used by the consent of the parties. He clearly shows them to be fixtures in the correct sense of the term. The water-wheel is indeed movable, and hung on gudgeons, and has a head-stock not fixed; and the gearing consists of upright shafts and horizontal shafts, on which are drums, and on these are belts. All these are connected with cog-wheels, and the belts carry the motion

from one to another. The ends of the shaft of the wheel rest of course on permanent fixtures in the building; and it cannot be taken out without removing a part of the building, and being separated into pieces.

The exception, therefore, as to the fixtures, is also overruled, and the report is confirmed.

Decree accordingly.

Second decree: This cause coming on again to be considered upon the report made by the commissioners appointed to assign dower in the premises, two exceptions were taken in behalf of the respondents to the said report, viz. 1st, That the commissioners erred in not considering "the mortgage to Rufus Flint of October the 21, 1808, in the pleadings mentioned as an alienation by the said Roswell Merrick, so as to affect the right of his wife to dower." 2d. That the commissioners erred in considering "the water-wheel and the main gearing of the factory as real estate." The exceptions were thereupon argued by counsel for both parties. On consideration thereof, and of the premises, it is ordered, adjudged, and decreed by the court, that the said exceptions be and they hereby are overruled; and that the same report do, in these respects, stand confirmed. And further, that the dower therein assigned to the complainants by the commissioners, firstly in their report, upon the ground, that they were right in their opinion on the points above excepted to, be, and hereby is confirmed and assigned to the complainants accordingly; and that the same report do, in all other respects, stand confirmed. And it is further ordered, adjudged, and decreed, that the respondents do deliver possession of the premises so assigned to the complainants accordingly, and do in all other respects perform this decree; and that the complainants do recover their reasonable costs in the premises, taxed at $345.75.