Parsons *v.* Copeland.

PARSONS, *Petitioner for Partition, versus* COPELAND *&· als.*

Where one of the commissioners in a warrant for partition, after it issued, declined to act, the appointment of another by the Court, with the certificate of the clerk, on *such* warrant, will authorize the *substitute* to act in the premises.

The *interlocutory* judgment, in petitions for partition, affects only the *common* property, as it existed when the petition was filed.

Buildings *rightfully* erected upon the common property, by one of the tenants in possession, for his own use, after a co-tenant has filed his petition for a division, cannot be *appraised* by the commissioners in estimating the value of the entire property, and thereby give to the petitioner a *share* of their value.

The appraisal of *such buildings*, although no part of *them* is assigned to the petitioner, will make the proceedings of the commissioners erroneous.

Things personal in their nature, such as belts, looms, carding machines, pickers, jacks, spoolers and dressers, suited and designed for a woolen factory, and placed therein by the owners, although they may be taken away without detriment to the freehold, are, nevertheless, fixtures which appertain to the realty, and in a partition ordered among tenants in common, may be divided as real estate.

On Report, Hathaway, J., presiding.

Petition for Partition.

This case was before the Court, (33 Maine, 371,) when partition was ordered and commissioners appointed. Their report was subsequently offered for acceptance, when Calvin Copeland, one of the respondents, filed objections: —

1. Because Lysander Cutler, Caleb B. Curtis and Jonas Wheeler were appointed commissioners and commissioned in due form of law, and at a subsequent term Paschal Abbott was appointed by said Court instead of said Cutler, but no commission under the seal and attestation of said Court ever issued, directed to said Paschal Abbott.

2. Because the said commissioners set off and assigned to said Parsons, property of which Calvin Copeland was sole seized in fee, and in which the petitioner had no seizin nor possessory right.

3. Because the commissioners set off as real estate personal property belonging to said Copeland, to wit, machinery connected with a woolen factory, consisting of looms for weaving, carding machines, bands, water-wheel, fulling stocks and boilers, together with other personal property generally found in a woolen factory.

The petition for partition was entered at the October term, 1849, and described the entire premises of the tenants in common, containing five acres, and all the privileges and appurtenances to the mill or factory privilege, and claimed, that the petitioner was owner in fee of twenty-three six hundred and twenty-fifth parts of the premises, and that the same might be set off in severalty.

At the October term, 1852, an interlocutory judgment was entered, the commissioners were appointed and their warrant issued, but one of them having declined, Paschal Abbott was appointed in his place, and the same was certified on the warrant by the clerk.

The return of the commissioners set forth particularly their doings in complying with their warrant.

Evidence was introduced showing, that Calvin Copeland

Parsons *v.* Copeland.

in 1850, built a dye house near the factory without a cellar. In it was a copper kettle, iron kettle, washers, fulling stocks, press and shafting. A dry house also was built by him, at the same time, standing on blocks, and the year following a wood house.

In estimating the value of the entire property the commissioners included the preceding, but none of it was set off to plaintiff. In the part set off was a portion of the machinery, consisting of looms, carding machines, belts and wheels by which the woolen factory was operated.

All the papers used in the former trial were presented, and the Court were authorized to render judgment according to the legal rights of the parties upon the evidence admissible, the parol evidence being objected to.

*Hilliard & Flagg,* for respondents, cited 12 N. H. 205; 4 Pick. 311; 9 Conn. 63; 14 Mass. 352; 4 Metc. 306; 17 Johns. 116; 20 Wend. 636, and the case of *Seaff* v. *Hewitt & al.* Ohio R. Jan. term, 1853, and particularly the *comments* of the Ohio Court upon the case of *Farrar* v. *Stackpole,* 6 Greenl. 154. He cited also 2 Watts & Serg. 116.

*J. Crosby,* for petitioner.

1. There was no error in the commission, and if so it was amendable. 3 Greenl. 29; 10 Maine, 278; 26 Maine, 411; 23 Maine, 251.

2. The store house and land was common property.

3. The property set off was real estate. All the machinery and buildings have become a part of the realty by *accession.* The property to be divided was settled by the *interlocutory judgment.* The construction given to the language of the warrant by the commissioners has been well settled in this State. *Farrar* v. *Stackpole,* 6 Greenl. 154; *Trull* v. *Fuller,* 28 Maine, 545; *Corliss* v. *McLaughlin,* 29 Maine, 115.

The same principles of construction apply to a levy as to a deed. *Waterhouse* v. *Gibson,* 4 Greenl. 230; 2 Kent, 346.

In Massachusetts the law is the same. *Winslow* v. *Mer.*

*Ins. Co.,* 4 Metc. 314; *Butler* v. *Page,* 7 Metc. 40; 8 Metc. 26; 19 Pick. 314. The same view is taken in Pennsylvania. *Voorhis* v. *Freeman,* 2 Watts & Serg. 116; *Gray* v. *Holdship,* 17 S. & R. 415. In New Hampshire such is the law. *Despatch line of Packets* v. *Bellamy,* 12 N. H. 205; *Powell* v. *Monson,* 3 Mason, 466.

TENNEY, J. —1. The commission issued upon the judgment for partition under the seal of the Court. One of the persons appointed to make the division declined to act, and the Court designated another. This appears by the commission and the official certificate of the clerk thereon, and was in all respects sufficient authority to those appointed, in the discharge of the duties prescribed. The substitution of one commissioner for another did not annul the commission in other respects or impair its legal effect. After the substitution, the seal upon the commission was adopted, and applied equally to the person substituted, and to those who were previously appointed, and accepted the trust.

2. Another ground of objection to the acceptance of the report is, that the commissioners set off and assigned to the petitioner, property of which Calvin Copeland, the respondent, was sole seized in fee, and in which the said petitioner had no seizin in or possessory right.

The petitioner obtained twenty-three, of six hundred and twenty-five parts of the premises, under the levy of an execution in his favor against Calvin Copeland, on Nov. 18, 1847. The petition for partition was presented to this Court and entered therein at October term, 1849, in the county of Penobscot; and judgment for partition thereon was rendered at the October term, 1852, of the same Court, and commissioners were appointed to make partition, who made their return and report on Feb. 16, 1853, signed by them.

The case discloses, that after the levy of the execution and the filing of the petition for partition in Court, and before the interlocutory judgment, a dye house and a dry house,

Parsons *v.* Copeland.

with kettles and other articles therein, together with a wood house, were erected on the premises by Calvin Copeland, for the purpose of carrying on the factory with greater facility and profit. It does not appear that the petitioner aided in the erection of these buildings, or that he consented or objected to their erection. These were taken into the estimation of the value of the premises by the commissioners, and the division made accordingly, though no part thereof were set off and assigned to the petitioner, and the party, who caused their erection, is not deprived of them. But as they constituted a part of the appraised value of the whole, the value of the share set off to the petitioner was proportionably greater than it would have been, if they had not been taken into the account.

If these buildings had been upon the land at the time the petition was filed, and no question had been presented in the proceedings, whether they were a part of the common property or not, the interlocutory judgment would have established the title in the petitioner to twenty-three parts of the six hundred and twenty-five, including the buildings in question. The commissioners would have had no authority to exclude any part of these buildings, upon the land; and would not have been empowered to inquire whether they were erected exclusively by one tenant in common or not, with the view to disregard them in the division, if it should be found, that they were erected by one party alone, before the filing of the petition. Under the commission they would have been bound to make division of the premises, as they found them.

But the judgment for partition must be based upon the petition, and the estate therein described. It cannot include property, not embraced in the petition, or which has not been added under such circumstances as to make it a part of the premises to be partitioned.

After a petition for partition has been filed in Court, and all the tenants in common of the land referred to therein, have had due notice of its pendency, if one should erect a

temporary building thereon, for his own exclusive use, by the consent of his co-tenants, such building would belong to the party alone, who erected it, in the same manner, that it would, if placed upon the land of a stranger, under similar permission.

It cannot be assumed, from the evidence, that Calvin Copeland, being in possession of the premises, as a tenant in common with the petitioner, who owned a small part only of the premises, erected the buildings in question wrongfully, so that they became a part of the common property. But from the description of the buildings and the mode in which they were attached to the ground, and the use for which they were apparently designed, according to the testimony, and the entire want of evidence, that they were placed there against the consent of the petitioner, it may well be inferred that they were erected rightfully, and never became the property of the tenants in common. Consequently it would seem to comport with the justice of the case, and with the equitable rights of all the owners of the premises, that the partition should be based upon an estimation of their value exclusive of those buildings, *if it* should be found by the commissioners, that they were legally erected by Calvin Copeland for his own use and benefit, subsequent to the filing of the petition for partition.

For these reasons, the report is recommitted.

3. Another ground relied upon against the acceptance of the report is, that the commissioners set off and assigned to the petitioner, certain personal property belonging to said Copeland, to wit, machinery connected with a woolen factory, consisting of looms for weaving, carding machines, bands, water-wheel, fulling stocks and boilers, together with other personal property generally found in a woolen factory.

As the report is to be recommitted for reasons already stated, it is considered proper to discuss the question presented in the last ground of objection to its acceptance, and *to decide the rights of the parties to the property referred*

to, so that the commissioners may be enabled to make their report in accordance with those rights.

It appears that one of the buildings upon the land described in the petition and the commission, was a "woolen factory," in which were certain machines, such as are common in such a factory, consisting of cards, looms, jacks, spooler, picker and dresser, sitting upon the floor. The frames of the looms were fastened by cleats, to prevent their moving. There were fastenings made *into* the floor, and the jacks and cards were fastened *to* the floor. And, as we understand from the report, this machinery was put in operation by means of water power connected with the factory.

On the question, whether such machines, so situated, are fixtures, so that they constitute a part of the real estate, the authorities are far from being uniform, and no rule of universal application can be deduced from them, without conflicting with the doctrines found in some of the decisions upon the subject.

It was held in a leading case in England, *Elwees* v. *Mawe*, 3 East, 38, after much consideration, that there was a distinction between annexations to the freehold, for the purposes of trade and manufacture, and those made for the purposes of agriculture, and that the right of removal by the tenant, of the former, was much stronger than of the latter. And it may be regarded as well settled, that an article may constitute a part of the realty, as between vendor and vendee, which would not under similar conditions and circumstances be so treated as between landlord and tenant. 2 Kent's Com., Lecture 35.

The same distinction exists between the rights of the heir and executor, in favor of the former; and between the tenant for life and the remainder-man, or the reversioner. The rights of the mortgagee to such additions made by the mortgager, during his possession have been equally favored with those of a vendee. *Winslow & als.* v. *Merchant's Ins. Co.* 4 Met. 306. The same rule will apply to fixtures

under the levy of an execution, as it does between vendor and vendee, passing them as parcels of the inheritance in one case as in the other. *Powell & ux.* v. *Monson & Brimfield Manf. Co.* 3 Mason, 459.

The case before us, differs in some respects, from the classes of cases referred to, as this concerns the power and duty of commissioners in making division of real estate owned in common and undivided, by the parties. By the judgment of partition each party is equally the owner of the premises, and has equal rights therein, in the proportion, determined thereby. Whatever was in the "Woolen Factory," situated upon the land described, and used in the appropriate business thereof, could not have been considered by the commissioners, to be temporary for one party more than for the other, and therefore cannot fall within the principle applicable, as between landlord and tenant. Hence it is a case, where the doctrines, which govern, as between vendor and vendee, are to have their most extended influence.

Still, if one party had placed in the factory certain articles, which were clearly personal in their nature, and under no rule, became part of the realty, the commissioners were not at liberty to regard them in the division, which they undertook to make.

It has been held necessary, in order to constitute a fixture, that the article should be let into, or united to the land, or to substances previously connected therewith. Ames & Farrard on Fixtures, 2. In *Walker* v. *Sherman,* 20 Wend. 636, it was held requisite, that the article be actually affixed or annexed to the realty, to become parcel thereof. By other authorities, it has been regarded necessary, in order to give to chattels the character of fixtures, and deprive them of that which they had before the relation to the realty commenced, that they be so firmly fixed, that they cannot be moved without injury to the freehold by the process of removal. *Farrar* v. *Chaufette,* 5 Denio, 337.

It cannot be denied, that the physical attachment of cer-

tain articles to the freehold, is a very uncertain and unsatisfactory criterion. We have seen, that it is well settled, that the same attachment will not change the character of the article, when made under one species of tenancy, when under another, with much less of a permanent connexion, it will cause the article to become a part of the real estate. Millstones, the gear of the mill, and the water-wheel to which the power is applied, and the articles connected, which are universally conceded to be fixtures, and to pass with the realty, may be taken from their appropriate places, without the withdrawing of a spike, a pin, or a nail, or the displacement of a cleat, their own weight often keeping them in their intended position, and no injury whatever arise to the building from which they are taken. Many articles, constituting essential parts of the most permanent dwellinghouses, and without which the buildings could not be comfortably occupied, may be entirely removed with the greatest facility, and no injury be occasioned to the portions remaining.

Mr. Dane remarks, " it is very difficult to extract from all the cases as to fixtures, in the books, any one principle on which they have been decided, though, being fixed and fastened to the soil, house or freehold, seems to have been the leading one, in some cases, though not the only one." " Not the mere fixing or fastening is alone to be regarded, but the use, nature and intention." Abridg. of Amer. Law, vol. 3, p. 156.

In *Winslow & als.* v. *Merchant's Ins. Co.*, before cited, the Court say, " as to what shall be deemed fixtures, and part of the realty, when the question does not arise between landlord and tenant, or tenant for life and remainder-man, in regard to improvements made by the tenant, it is difficult to lay down any general rule, which shall constitute a criterion. The rule, that objects must be actually and firmly fixed to the freehold, to become realty, or otherwise to be considered personalty, is far from constituting such a criterion.

In *Teaf* v. *Hewett & al.*, from the Ohio Reports, cited in

the argument, where the Court came to the conclusion that machines in a factory are not parts of the realty, the learned Chief Justice in a very elaborate opinion says, " after a careful review of all the authorities, I have reached the conclusion that the united application of the following requisites will be found the safest criterion of a fixture. 1st. Actual annexation to the realty, or something appurtenant thereto. 2d. Application to the use and purpose of that part of the realty with which it is connected. 3d. The intention of the party making the annexation, to make the article a permanent accession to the freehold; this intention being inferred from the *nature* of the article affixed, the *relation* and *situation* of the party making the annexation, the *structure* and *mode* of annexation, and the *purpose* and *use*, for which the annexation has been made."

The intention is here held essential in the determination of the question, and so far the rule is not in conflict with the views entertained by the Court in 4 Met. The same Judge seems to consider the want of the first requisite, as not entitled to controlling influence in all cases, for he remarks, that " the doors, windows, shutters, &c., of a mansion house may be raised and removed without any actual physical injury, either to the building or the article removed; so also, in a mill with the millstones, hoppers and belting apparatus, as usually fixed in a mill, yet it has never been questioned, that these articles are fixtures."

It is undoubtedly true, that the second requisite quoted is important. It will not be contended, that a machine, fitted to be moved by water or steam power, portable in its character, when placed in a building, (having such power for other and distinct objects) with the mere purpose of testing the capacity of such machine to perform the contemplated operations, by the application of the power by the belts in previous use, would become a part of the realty, by such experiment. Such was not the design, and such cannot be the legal effect.

But it is true undoubtedly, that the building, the water-

wheel and the gear designed for a grist-mill, has peculiarities, and is often very different from the water-wheel, the gear, as well as the building intended to constitute parts of a woolen factory. And the machinery in the former, consisting of the millstones, the cleansing apparatus, the bolts, the belts with their appendages, to carry the grain to the cleanser and the meal to the bolts, all of which are believed sometimes, if not generally, to be moved by means of the belts connected with the gear of the mill, together with the hoppers, the hoops, troughs, &c., are as easily removed as are the cards, the looms and the pickers, in the latter. If the building is designed for a woolen factory, the wheels and gearing to which the motive power is applied, constructed in a manner suited to promote the intended object, after the machines are placed in the building, it is only another step in the prosecution of the design; and it is not easy to understand wherein the latter fail to have the properties of the former; or how one can have distinguishing characteristics from the other, so that one is to be treated as personal property, while the other is real estate. A wheel in the gearing is moved by corresponding cogs in that wheel, and the water-wheel. The wheel of a carding machine is caused to move by means of a belt connecting the wheel of the gearing therewith, or by means of another set of corresponding cogs. By what rule is it, that the dividing line between the realty and the chattels shall be at one point or the other?

It is the supposed intention of a tenant for a limited time, in placing articles, which if made by the absolute owner would become part of the realty, to remove them at the expiration of his term, because such would be for his interest. This intention might be inferable, if the articles placed in a mill, which was rented for a term less in duration, than that of the supposed existence of the articles themselves. But when the same articles are placed therein by the owner of the mill, to carry out the obvious purpose for which it was erected, and which are in all respects suited therefor,

and may be unsuited for another mill, it is difficult to see the reason of the proposition, that these articles are still chattels in the hands of him who is the common owner of all, when in fact, they are more permanently attached to the freehold than many things universally admitted to be parcel of the realty.

This Court have repeatedly held, that certain articles, not differing materially in their general character in reference to the question which we have considered, ceased to be personal property, when used in connection with the real estate for the purpose designed, in an appropriate manner. *Farrar* v. *Stackpole*, 6 Greenl. 154; *Trull* v. *Fuller*, 28 Maine, 545; *Corliss* v. *McLagin*, 29 Maine, 115. No reason is perceived for withdrawing the present case from the doctrines of those previously decided, especially as authorities in other States fully sustain the views here taken, although in others, Courts of the highest standing have come to different conclusions.

*Report of the commissioners recommitted.*

SHEPLEY, C. J., and HOWARD and HATHAWAY, J. J., concurred.