## JOHN G. MAGUIRE *vs.* JOHN H. PARK.

Middlesex.     March 17. — June 20, 1885.     W. ALLEN, COLBURN, & HOLMES, JJ., absent.

Machines separately constructed, adapted for use in any building in which they can be put, secured in position by bolts, screws, nails, or cleats, and capable of being removed without injury to themselves or to the building in which they are placed, do not necessarily, as matter of law, pass under a mortgage of the building and the land on which it stands.

REPLEVIN, by the assignee in insolvency of Lawrence B. Norris, of a lot of machinery. The case was sent to an auditor, whose report was in substance as follows:

The plaintiff claims title to the replevied articles as a part of the personal estate of the debtor. The defendant is the owner of the real estate and building in which the replevied property was situated, and contends that the machinery was part of the realty, and passed to him by the deed by which he acquired title.

The real estate, consisting of about twenty-five thousand feet of land in Woburn, with buildings thereon, was conveyed, on November 29, 1870, by James Tweed to A. J. Parker. There was no machinery in the building at the time of this purchase. Parker on the same day mortgaged the property to Tweed for $3000.

He put in an engine and boiler, and necessary shafting, and the following machinery: one planing machine, one moulding machine, one jointing saw, one combination saw, one jig saw, and one turning-lathe. These are a portion of the articles replevied. Parker occupied the building as a planing-mill and wheelwright's shop.

On June 1, 1871, Parker gave a second mortgage for $1500 to James Tweed, of the same real estate. On September 18, 1875, Parker gave a third mortgage for $3000 upon the real estate to said Lawrence B. Norris. In none of the above conveyances is any reference made to machinery.

On September 18, 1875, A. J. Parker, with John F. Parker, described as his copartner, executed to said Norris a mortgage for $3000 of the personal property on said real estate, namely: " One planing machine, one moulding machine, one stationary engine and boiler, and all other machinery and tools that are now in our shop, situate on the westerly side of Prospect Street, in the Centre Village of said Woburn." This mortgage was duly recorded in the office of the town clerk of Woburn, and was subsequently foreclosed and sold; and by conveyances under said sale came to said Norris.

Norris took possession under the mortgage of September 18, 1875, and foreclosed and sold the real estate to John W. Johnson, by deed dated June 22, 1877. On the same day Johnson conveyed the real estate to Norris.

In March, 1878, Norris formed a copartnership with R. C. Huntress and W. B. Beatty, under the style of R. C. Huntress

and Company. He put in a new foundation for the planer (which is hereinafter described) and added the following machinery: one cutting-off saw, one fitting saw and matcher. This firm occupied the mill for planing and box-making until September 1, 1878, when it dissolved. Norris then took the business in his own name, and from time to time, down to 1882, put in the other machinery named in the writ. He continued to use the mill as a planing and box mill, with a sign on the outside, " Planing and Moulding Mill," which sign continued on the building till its purchase by the defendant.

Early in 1883, Norris gave to one Samuel M. Barker a bill of sale of the above-described machinery, whereupon involuntary proceedings in insolvency were commenced against Norris, and on January 18, 1883, the plaintiff was appointed assignee. The property was not removed from the building by Barker, but suits were instituted by the plaintiff against Barker, which were adjusted, and on May 11, 1883, Barker conveyed his title in the machinery to the plaintiff. The machinery remained in position in the building until replevied, and until after a view had by the auditor in 1884.

On April 30, 1883, Sarah H. Tweed and Henry Tweed, as executors of the will of James Tweed, deceased, under the power of sale in the mortgage from Parker to Tweed, dated June 1, 1871, and in execution of said power, conveyed the real estate to the defendant Park.

The machinery was in the mill at the time of the sale to Park, affixed to the building as hereinafter described. Park entered into, and has since retained, possession of the real estate. There was no evidence of any declaration at the sale as to whether or not the machinery went with the building, and no reference to it in the notice of sale or in the deed to Park. The defendant contended that, by his purchase of the real estate, he acquired the title to the machinery, and refused to deliver it to the plaintiff upon his demand.

The following is a description of the machinery replevied, and a statement of the manner in which it was affixed to the building:

1. Planer in the basement of the mill, and fastened by four bolts or lag screws, one through each foot, into a foundation

of masonry sunk about two feet into the earth, with plank on top; also by two bolts or lag screws, through bearing of planer, into the floor of the basement, which is laid snug to the foundation; operated by a belt and pulley; the floor timber cut about one sixteenth through to accommodate the pulley.

2. Moulding machine in basement beside the planer, and fastened to floor by four bolts or lag screws, one through each foot; also fastened, by two bolts, to the support of the building; operated by belt and pulley, to accommodate which the floor timber was cut about one sixteenth.

3. Combination saw, also in basement, near the moulding machine, and fastened to the floor by four bolts or lag screws, one through each foot; operated by belt and pulley; one of the supporting timbers was cut about one eighth through to accommodate the belt and shipper.

4. Wood-turning-lathe, also in basement, on the south foundation wall of building; fastened by an iron rod through the power end into a large stone in the foundation; also spiked to the floor by spikes through each of six legs; operated by belt and pulley, to accommodate which a floor timber was cut one fourth through.

5. Jig saw in the basement, near the lathe, fastened by two bolts to sill of building and two bolts through floor joist above; also nailed through supports; operated by belt and pulley, to accommodate which a floor timber was cut one fourth through, and a floor joist cut two thirds through.

6. Upright drill in the shop on second floor of mill, fastened to floor by three bolts or lag screws through foot of drill; operated by belt and pulley. Four holes cut through floor and one through partition.

7. Small upright drill in same room with No. 6, and fastened to floor by three bolts or screws through foot of drill; operated same as No. 6.

8. Splitting or fitting saw on the second floor of mill; fastened by cleats and nails, and operated by belt and pulley; belt running through two holes cut in floor.

9. Splitting or fitting saw on same floor with No. 8; fastened to floor by four bolts or lag screws; operated by belt

and pulley; floor cut in two places, and floor timber cut to run belt.

10. Splitting or fitting saw, same floor with No. 8; fastened to floor by nails through legs; operated by belt and pulley, with belt running through floor through two holes cut for that purpose.

11. Squaring-up saw, with treadle, on second floor; fastened by four bolts or lag screws, one through each leg; also two bolts or screws through hangers, and braced, bolted, and nailed by a table to floor; belt and pulley, belt running through two holes cut in floor.

12. Squaring-up saw, with swing, in second floor; hangs from floor joists of third floor, to which attached by four bolts and nails; operated by belt which runs through floor in two holes cut, and a floor timber cut one third through.

13. Grooving or matching machine on second floor; fastened to floor by two bolts from two legs; run by belt, for which two holes were cut through floor.

14. Grooving or matching machine, near No. 13; fastened to floor by four lag screws, one to each foot of machine; run by belt, for which two holes were cut through floor.

15. Grooving or matching machine, on third floor; fastened to floor by nails; operated by belt running through two holes cut in floor.

16. Splitting saw, on third floor; fastened to floor by four bolts; operated by belt running through floor, for which two holes were cut, and a hole cut through floor to accommodate a shipper.

17. S. A. Wood planer, on third floor; fastened to floor by four bolts or screws; operated by belt running through two holes cut in floor, and another hole cut for the shipper.

18. Resawing machine, on third floor; fastened to floor by nails, and cleats fastened around legs; operated by belt running through two holes cut in the floor, and another hole cut for a shipper.

19. Dovetailing machine or locking machine, on third floor; fastened to floor by four bolts or lag screws; operated by belt; two holes cut through floor, and timber brace cut one fourth through.

20. Sand-paper machine, on third floor; fastened to floor by nails and cleats; operated by belt and pulley, running through two holes cut in floor.

The report concluded as follows: "Upon all the evidence, I report that the title to the replevied property was in the plaintiff, and that he is entitled to recover the same."

After the auditor's report was filed in the Superior Court, it was agreed that it might be taken as an agreed statement of facts.

The case was then heard, and a judgment was ordered for the plaintiff. The defendant appealed to this court.

*W. B. Gale & J. P. Gale*, for the plaintiff.

*G. C. Abbott*, for the defendant.

FIELD, J.   The plaintiff is the assignee in insolvency of Lawrence B. Norris, and claims title under a mortgage of the machinery as personal property, given on September 18, 1875. The defendant claims title to the machinery under a mortgage of the land and building given on June 1, 1871. The engine, boiler, shafting, and a part of the machinery, were put in the building by the mortgagor before making this mortgage, and a part of the machinery was subsequently put in by Norris, who was the third mortgagee of the land and building, and took possession under and foreclosed his mortgage on June 22, 1877. The defendant took possession on April 30, 1883, having purchased the land and building at a sale under the power of sale contained in the mortgage of June 1, 1871.

The question is whether the machinery was so affixed to the building that it became real property, as between mortgagee and mortgagor. The description, in the auditor's report, of the machinery, and of the manner in which it was affixed to the building, is somewhat brief, and it is plain that all the facts are not before us that were brought before the auditor, as his view of the premises would be evidence before him. There are no questions of law raised in his report, and the auditor found for the plaintiff. It is not found for what purposes the building was erected, or to what uses it was by its construction adapted, or that the removal of the machinery would in any way injure the building, or impair its value for any of the uses to which it was suited. All of the machines appear to

have been separately constructed, and fit for use in any building in which they could be placed; and were secured in position by bolts, screws, nails, or cleats, and could be removed without injury to themselves or the building. The engine, boiler, and necessary shafting, are not included in the writ, and were not replevied.

It has been said, that "the object, the effect and the mode of annexation are all to be considered in determining whether any specific articles are removable fixtures." *Leonard* v. *Stickney*, 131 Mass. 541. In *Allen* v. *Mooney*, 130 Mass. 155, it was held that a portable furnace set in a house upon brick foundations might or might not be a part of the realty, "dependent upon the intention and understanding of the party who devotes it to the use of the building, whether it shall be merely personal property, or whether it shall constitute a part of the building;" and that, as a question of mixed law and fact, the finding of the judge, who tried the case without a jury, could not be revised by this court, if there was competent evidence to support it. It does not appear in the present case that the machinery could not be removed, and other machinery of a different kind put in, and the building be used as beneficially for the new business as for the old. It does not appear that the machinery was put into the building "to carry out the obvious purpose for which it was erected, or permanently to increase its value for occupation." *McConnell* v. *Blood*, 123 Mass. 47. There is great difficulty in determining, as matter of law, upon an agreed statement of facts, whether articles of the kind here described have or have not become a part of the realty, particularly when all the facts which would be competent upon the question are not contained in the agreed statement. The indications afforded by the mode of annexing a machine to a building, and by the use made of it, must clearly show an intention of permanently making it a part of the building, to enable the court, from these facts alone, to declare that, as matter of law, it is a part of the realty in cases where the machine is portable, complete in itself, and can be used elsewhere as well as in the building, and can be removed without injury to itself or to the building.

If this case had been submitted to the Superior Court upon the auditor's report alone, without making it an agreed statement

of facts, it would certainly have been competent for that court to have affirmed the finding of the auditor in favor of the plaintiff. It is not entirely clear what the effect is of the parties submitting the case to that court upon the auditor's report as an agreed statement of facts, as the auditor has found that the plaintiff is entitled to the property, if that is a finding upon a mixed question of law and fact. However that may be, we are inclined to think that the case falls within the principles of the decision of *Hubbell* v. *East Cambridge Savings Bank*, 132 Mass. 447; and that the judgment must be

*Affirmed.*