The Equitable Guarantee and Trust Company, Trustee, and Mary C. Smith,

*vs.*

William G. Knowles, James E. Mitchell, James G. Knowles and Paul Gillis, Sheriff of New Castle County.

*New Castle, Sept. T.,* 1896.

The former rule that to constitute a fixture as between vendor and vendee, mortgagor and mortgagee, it was necessary that there should be such annexation to the freehold that the chattel could not be removed therefrom without injury either to the freehold or to itself is no longer followed in the case of machinery and appliances of a manufacturing plant.

In such case machinery set upon the freehold by the owner and fixtures erected or fastened thereto for a permanent purpose or as an improvement to the property, enhancing its value, will be considered a fixture, especially if the adaptation of the means to the end is shown to be appropriate as being indicative of a design to incorporate the machinery with the freehold and make it a part of it.

When chattels are attached to the freehold for a permanent purpose and are adapted to the employment or business to which the real estate is devoted and the circumstances indicate a design on the part of the owner of the freehold to make the machinery a part of it, the chattels then become part and parcel of the freehold and the owner of the land himself cannot detach or remove them and change their character back into personalty to the prejudice of a mortgage creditor.

The rule as to fixtures, as applied to machinery moved by the power of steam or water, has been greatly extended in modern times, both in England and America—but it still remains the settled law, that machinery and implements in a cotton or woolen mill, although necessary for its use and enjoyment as such, and although of a character adapted only to the particular business there carried on, if not actually attached in some manner to the building, or to fixed machinery, by belting or otherwise, do not pass with the freehold.

In cotton and woolen mills all machinery actually affixed to the freehold, although only by scews, or bolts, or connected with it by belts, or bands, passes with the realty.

With the *corpus* of fixed machinery passes all that properly belongs to and forms an integral part of it, although capable of being detached and used elsewhere.

In case a given article, from its nature, or use, is part of a fixture, so are also all duplicates and different patterns of the same, used for the same purpose, although one only may be used in the same machine at a time.

In woolen and cotton mills and probably in most other mills there are certain articles which are necessary for, and are used with the fixed machinery and are moved by and with it, which are of a more perishable character, are not purchased with such machinery, require more frequent renewal, and are not integral parts of it, but rather belong to the class of findings or supplies, and do not pass with such fixed machinery as part of the freehold.

Articles whereby admitted fixtures are connected with the freehold, and whereby motion is imparted to the machinery as shafting and belting are an essential and integral part of the freehold and pass with it.

The simple criterion of physical attachment is so limited in its range and so productive ot contradiction, even in regard to fixtures in dwellings, to which it was adapted before England had become a manufacturing country, that it will answer for nothing else.

All the machinery of a manufacturing plant which is necessary to constitute it, and without which it would not be such a plant, if attached to the freehold in any manner whatsoever, whether by physical annexation or being connected with the power which moves the machinery, or in case of ponderous articles or machinery of immense weight by mere gravitation, are fixtures and must pass for a part of the freehold.

While the character of a chattel used in a manufacturing plant and connected with the freehold may be fixed by contract with the

owner of the real estate, such contract cannot affect the rights of a mortgagee or of an innocent purchaser without notice of it

Whether the machinery and appliances of a manufacturing plant are to be considered fixtures, depends largely upon the intention of the owner with which they were placed in the building and the tendency of modern cases is to make this intention the primary criterion; but the intention contemplated by the decisions is not an undisclosed purpose of the owner, but the intention made manifest by his act. This is necessarily so, because it is an intention which determined not merely his own rights but those of third persons whose rights must necessarily depend not upon the secret purposes of the owner, but upon the inference to be drawn from his acts and the surrounding circumstances.

INJUNCTION BILL.—The object of the suit was to restrain the respondents from selling under execution certain machinery and appurtenances of a cotton and woolen factory which had been levied upon by the sheriff as personal property, under executions in favor of the other respondents, who were judgment creditors. The complainants were mortgagees who claimed that the property levied upon was to be classed as fixtures and, as such, subject to the lien of the mortgages as part of the realty. The mortgages expressly enumerated "all the woolen and cotton machinery, looms, shafting and boilers that might then or thereafter be placed or erected on or within the premises," but there was no claim that the mortgages operated as chattel mortgages under the statute, and they were not executed under its provisions. The sole question was how much and what part or parts of the property levied on could properly be designated as fixtures to which the lien of the mortgages would attach as part of the real property mortgaged.

The first mortgage was made to Alfred C. Nowland, as trustee for divers persons beneficially interested in the debt secured by it, and on the death of the trustee the complainant corporation was appointed in his stead.

It was also alleged and not controverted that the respondent, James G. Knowles, was otherwise largely indebted and wholly insolvent, and that the complainants had on other means of recovering their debts against him, except from the

proceeds of the mortgaged property. They alleged that the machinery, fixtures and other property levied on, and the sale of which was threatened, in violation of their rights, constituted an important and essential part of the security for the debts due to the complainants, and that if the same were removed from the premises the value of the property would be impaired and greatly diminished and not sufficient for the payment of the debts, or even the first of them.

The prayer for specific relief was for an injunction to restrain the respondents from selling or removing from the mortgaged premises any of the machinery, fixtures or property mentioned or described in the shedule annexed to the bill. A preliminary injunction was also prayed for.

There was annexed to the bill, as "Schedule A," an enumeration of the machinery, fixtures and property which the complainants claimed were to be considered as between mortgagor and mortgagee to be fixtures within the meaning of the law on that subject. For convenience of reference the items are numbered, the same numbers being used in the affidavits.

## SCHEDULE A.

Picker room:—1. Wool washer; 2. 1 Shoddy picker; 3. two shoddy pickers; 4. Burr Picker; 5. wool picker; 6. duster; 7. shafting and belting.

Lower dye-house:—8. whizzer; 9. 7 dye tubs and screens;

Basement:—10. garnet machine; 11. 1 duster.

Lower card room:—12. 4 setts cards and mules; 13. 1 grinding frame; 14. 1 tool rest; 15. shafting and belting; 16. winder; 17. spools and side-drawing bobbins.

Spooling room:—18. warp mill.

Upper card room:—19. 4 setts cards and mules; 20. spools and side-drawing bobbins; 21. grinding frame; 22. shafting and belting.

Engine room:—23. 2 main driving belts; 24. 4 pumps; 25. dynamo, lamps and wiring.

Machine shop:—26. lathe and tools.

New weave room:—27. 2 twisters; 28. 5 winding frames; 29. 44 Goodyear witches; 30. 32 Knowles looms; 31. shafting and belting.

Old weave room:—32. 94 Goodyear witches; 33. 18 Knowles looms; 34. shafting and belting; 35. 100,000 bobbins.

Burling room:—36. napper; 37. press; 38. lapper; 39. shears; 40. shafting and belting; 41. burling tables.

Filling room:—42. section mill; 43. shafting and belting; 44. Measuring machine and table.

Drying room:—45. Ninyon dryer; 46. warp dryer; 47. Warp splitter.

Beaming room:—48. 6 Beaming frames complete; 49. 200 sets heddles; 50. 200 reeds.

Cloth and fulling rooms:—51. baling machine and counter; 52. 4 fulling mills; 53. soap tank; 54. whizzer; 55. 1 washer; 56. 1 washer.

Upper dye-house:—57. 4 warp frames; 58. 1 cloth dye tub; 59. 14 warp dye tubs.

Upper dye-house and fulling room:—60. belting and shafting; 61. fire pump and hose.

Wareroom:—62. pulleys and machinery; 63. Brushing machine.

The respondent, William G. Knowles, appeared by his solicitors, and filed an answer submitting himself to such order or decree as to the Chancellor should seem proper.

The respondent, James E. Mitchell, also filed an answer disclaiming any knowledge of the matters of record set forth in the bill, other than from the records themselves, and admitting his interest in the trust mortgage mentioned in the bill to the extent of three thousand dollars. He also admitted the truth of the statements in the bill respecting the indebtedness and insolvency of the respondent James G. Knowles. He also admitted the levies by the Sheriff, but was "not informed that the said Sheriff levied upon any fixtures or any property embraced in or covered by the said mortgages of said complainants," and submitted "himself to the judgment of this Court as to what, if any, articles levied upon under

said writ, issued on his said judgment, are embraced in and covered by the said mortgages of said complainants." He denied "that the said articles levied upon under his said writ constitute an essential and important part of the security of the said complainants," and averred "that all the machinery, in the Schedule, attached to the said bill, mentioned, is machinery made by manufacturers and adapted to be used in any suitable building, but that the same was not made with any particular relation to its being placed in the said manufactory of the said James G. Knowles, nor was the said building constructed or altered to adapt the same to the use of the said machinery.

"That the said machinery may and, in fact, has been moved from place to place in the said building, and a large portion of it has been placed in the said building within the last few years and since the execution of the said mortgages, and that the same can be readily removed from the said building and used in any other manufacturing establishment requiring similar machinery, and is not fixtures but the personal property of the said James G. Knowles."

The judgments mentioned in the bill as being held by William G. Knowles were characterized in the answer of the respondent Mitchell as being fraudulent and void.

No answer was filed by the respondent James G. Knowles, but his affidavit was read at the hearing of the rule. He stated with respect to the machinery, as follows:

"That when the machinery and apparatus, mentioned and described in Schedule A, attached to the complainants' bill of complaint, were placed in the said mill of this deponent, it was his intention that the same should remain there until worn out or replaced by other similar machinery and apparatus.

"That it was his intention when making the two mortgages mentioned in the said bill of complaint, that the said mortgages should cover all of the machinery and apparatus which were then, or might thereafter be placed or used in said mill for the manufacture of cotton or woolen goods, and in pursuance of such intention, this deponent has, ever since

the making of said mortgages carried a line of insurance as well on said machinery and apparatus as on the buildings erected upon said premises, which was made payable, in case of loss by fire, to the said mortgagees."

Deponent in his affidavit also referred to specific parts of the machinery in question, as follows:

Nos. 10 and 11, "were in use, and bolted to the floor in the room above. They were taken down and removed from that room and placed where they now are with the intention of running them there. They have never been run where they now are. Before they can be run where they now are, stringers will have to be placed and cemented in the floor and the machines bolted to them, and the necessary shafting and belting provided to drive them."

Of No. 62 it is said, "These are parts of shafting and machinery (chiefly for cards and mules) now in use in the mill. Most of these articles were purchased with the machines. They are interchangeable parts of the machines, and are used when making different kinds of goods. While the mill was running these articles were constantly being used and exchanged for other similar parts of the machines."

No. 63 "was in use, and bolted to the floor in the Filling Room. It was removed from there and put in the warehouse, where it now is, because it was not then needed for the goods then being made. The intention of this deponent was to replace it in the mill, and use it when he should be making goods which required it. When in use it would be screwed to the floor and driven by belting."

As to No. 29, "four of these looms which are not now in place, were, until a short time before the mill shut down, in place and screwed to the floor, and in use in the room where they now are. They were detached and set aside merely for temporary convenience to make way for some other machinery, but it was the intention of this deponent, as soon as the mill should be started again, to put them in place in the same room, screw them to the floor and use them as before the mill stopped. The mill was shut down last May and has not been running since."

Affidavits were filed both in support of and against the application for an injunction, one counter-affidavit filed by the respondent, Mitchell, being made by himself.

The complainants' affidavits described the property levied upon by the Sheriff, against the sale of which an injunction was sought, with much detail, as did also one of those filed by respondents.

John S. Spruance deposed that he "is and has been for about ten years last past engaged in the business of carding and spinning woolen yarns, and for about three years before that time, was employed in carding, spinning and weaving cotton and woolen yarns.

"That he is familiar with machinery and apparatus used for the manufacture of cotton and woolen goods, such as are now in the mill of the defendant, James G. Knowles, in the City of New Castle, in the County and State aforesaid.

"That on the twenty-fourth day of the present month, he visited the said mill of the said Knowles and made a careful examination of the machinery and apparatus in said mill, mentioned and described in the schedule thereto annexed, marked A, and numbered from one to sixty-three, inclusive."

The schedule annexed to this affidavit was an exact copy of that annexed to the bill, and above set forth.

After describing the machinery and apparatus mentioned in the schedule in detail, the affidavit continued:

"The wareroom in which are Nos. 62 and 63, is a frame building erected upon a lot of land situate on the easterly side of Washington Avenue, which is not included in either of the mortgages mentioned in the plaintiff's bill of complaint.

"All of the machinery and apparatus, mentioned in the annexed schedule, except Nos. 25 and 26 are essential and integral parts of the said mill, and are necessary to its use and completeness as a woolen mill, and without the same or similar machinery and apparatus the mortgaged property would not be a woolen mill.

"When in this affidavit the term 'driven by belting,' or similar expressions are used, it is meant that the machine

or apparatus is driven or operated by the steam power of the mill, transmitted by means of belting.

"This deponent is of the opinion, that if the machinery and apparatus mentioned in the annexed schedule should be removed, the value of the remainder of the property, covered by the said mortgages, would be greatly impaired, and would not be sufficient for the payment of the said mortgages."

Morris D. Crossan deposed that he was "the real estate officer of The Equitable Guarantee and Trust Company, one of the plaintiffs above named, and that part of his duty as such officer is to value real estate, and that his experience has been such as to make him acquainted with the value of mills and other property in said County.

"On the twenty-fourth day of the present month, this deponent, in company with John S. Spruance, visited the mill of the defendant, James G. Knowles, in the City of New Castle, in the County aforesaid, and made a careful examination of the machinery and apparatus in said mill, mentioned and described in the schedule marked A, annexed to the affidavit of the said John S. Spruance, herewith filed.

"That all of the statements in reference to the said machinery and apparatus, contained in the said affidavit of the said John S. Spruance, are true and correct.

"That all of the machinery and apparatus mentioned in the said Schedule marked A, except Numbers 25, 26, 62, and 63, are, in the opinion of this deponent, essential and integral parts of the said mill, and are necessary for its use and completeness as a woolen mill, and without the same, or like machinery and apparatus, the mortgaged property would not be a woolen mill.

"This deponent is of the opinion, that if the machinery and apparatus, mentioned in the said schedule, should be removed, the value of the remainder of the property, covered by the two mortgages mentioned in the complainants' bill of complaint, would be greatly lessened and impaired, and probably would not, at an execution sale of the same, bring sufficient for the payment of the said mortgages.

"That property of the character of that covered by the said mortgages has greatly depreciated in value, and that it is difficult, under the most favorable circumstances, to sell the same."

Howard L. Pyle deposed "that he is a practical machinist of thirteen years experience, and is perfectly familiar with the construction of iron machinery; that he has made a thorough examination of the machines and appliances mentioned in schedule A of the bill filed in the above cause, of which said machines the following is a description:"

Then follows a detailed description of the machinery and apparatus varying little from that contained in the affidavit of John S. Spruance.

The affidavit continues:

"Excepting as above described, each machine is complete in itself and not a part of any other machine.

"The attachment of the machines as above described was for the purpose of rendering the same steady in their position.

"In my judgment as a machinist and from my examination there is not one machine above described, with the exception of the Ninyon Dryer, in the Drying Room, which could not be removed without injury to the said machine or to the building. In most cases it merely requires the removal of a few screws."

Within ten days after the first examinations by Spruance and Pyle, they made together a re-examination of the mortgaged premises and of the machinery and apparatus in the mill, and jointly made another affidavit containing detailed statements with respect to each item of the schedule, containing in some cases fuller descriptions, but not varying materially from the detailed descriptions contained in their former affidavits.

The affidavit of the respondent, Mitchell, set forth "that he is thoroughly acquainted with machinery such as that contained in the mill of James G. Knowles;

"That he has made several examinations of the factory of the said James G. Knowles and of the machinery therein contained, the last examination having been made since the issuance of the writ of execution on his judgment against the said James G. Knowles;

"That the machinery in the said mill and in the Schedule attached to the bill filed in the above cause mentioned, is such machinery as is found in mills conducting the same business and was not manufactured to be placed in this mill, nor was the mill erected or has the same been altered for the reception of said machinery;

"That the said machinery can be removed, without any injury whatever to the same or to the said building, and used in similar mills;

"That the said machinery when it is attached to the said building is so attached for the purpose of making the use of the said machinery possible and not as an addition to the said building;

"That there is nothing whatever to prevent the said machinery from being removed and the same has, in fact, been so removed to various portions of the said building, and that the machinery now there has been substituted for other machinery formerly in said mill."

A careful examination of the detailed statements respecting the machinery and apparatus in the mill shows that the items in the schedule may be classified, as follows:

Nos. 8, 24 (part), 54 and 61 were driven by live steam applied through pipes from the boilers.

Nos. 1, 6, and 26 rested on the floor by their own weight.

Nos. 16 and 51 were operated by hand.

Nos. 24, 37, 42, 45 and 46 were connected with the mill by steam pipes.

Nos. 10, 11, and 63 were not at the time in use, but had been used and in such case were attached to the building and driven by belting.

No. 29 (being four looms) were at the time of examination not in place, but when in place for use would be necessarily fastened to the floor.

Nos. 45 and 46 are stated each to have been built in a room by itself, which would have to be torn down before the machine could be removed.

No. 62, consisted of frames, pulleys and duplicate parts of the machinery, not then in use, but stored.

Nos. 1 to 6, 12 to 14, 18, 19, 21, 24 (part) to 30, 32, 33, 36 to 39, 42, 45 to 48, 52 and 55 to 58 (all inclusive) were described as driven by belting.

Nos. 2 to 5, 8, 9, 12 to 14, 16, 18, 19, 21, 24, 25, 27 to 30, 32, 33, 38, 39, 41 (part), 45 (partly), 46 (partly), 47, 48, 51 to 58 (all inclusive) were secured to the mill by screws, nails, or other fastening.

Nos. 36, 41 (part) and 44 were not fastened to the freehold.

Nos. 7, 15, 22, 23, 31, 34, 40, 43 and 60 were shafting and belting "used for the transmission of power to the machinery. The shafts are set in hangers, which are attached by bolts or screws to the wooden joists or stringers, forming part of the building. The term shafting is understood to include shafts, pulleys and hangers."

The bill was filed September 14, 1896, and thereupon the Chancellor made an order for a rule to show cause why a preliminary injunction should not issue, returnable on Tuesday, September 29, at eleven o'clock, at which time the answers and affidavits were filed, as above set forth, and the rule was heard.

*W. C. Spruance* and *A. W. Spruance*, for complainants.

(1) All the articles levied upon are a part of the realty, being either:—

(a) Actually or constructively attached to the freehold with the intent that they should become permanent parts thereof. *Rice vs. Adams,* 4 *Harring.* 332; *Watertown &c. vs. Davis,* 5 *Houst.* 213, 214; *Holland vs. Hodgson,* 7 *C. P.* 328; *Winslow vs. Merchants Ins. Co.* 4 *Metc.* 306; *Burnside vs.*

*Twitchell*, 43 *N. H.* 390; *McRea vs. Bank*, 66 *N. Y.* 489; *Quinby vs. Manhattan &c.*, 24 *N. J. Eq.* 260; *Arnold vs. Crowder*, 81 *Ill.* 56; *Coleman vs. Stearns Co.*, 38 *Mich.* 30; *Taylor vs. Collins*, 51 *Wis.* 123; *Doughty vs. Owen*, 19 *Atl.* 540; *Helms vs. Golroy*, 26 *Pac.* 851.

(b) Or if not actually attached, they were placed in the mill as essential and permanent working parts thereof. *Equitable Co. vs. Christ*, 47 *Fed. Rep.* 756; *Voorhis vs. Freeman*, 2 *W. & S.* 116; *Pyle vs. Pennock, id.* 390; *Hopewell Mills vs. Taunton*, 150 *Mass.* 519; *Farrar vs. Stackpole*, 6 *Me.* 154; *Corliss vs. McLagin*, 29 *Me.* 115; *Cavis vs. Beckford*, 62 *N. H.* 229; *Delaware &c. vs. Oxford Co.*, 36 *N. J. Eq.* 452; *Hoskin vs. Woodward*, 45 *Pa. St.* 42; *Ege vs. Kille*, 84 *Pa. St.* 333; *Woolen Co. vs. Hawley*, 44 *Iowa*, 57; *Smith vs. Blake*, 96 *Mich.* 542; *Cooper vs. Harvey*, 16 *N. Y. Supp.* 660, 662; *N. Y. &c. vs. Saratoga &c.*, 34 *N. Y. Supp.* 890; *Lawton vs. Salmon*, 1 *H. Bl.* 259 (*note b*); *Powell vs. Monson*, 3 *Mason* 459; *Huston vs. Clark*, 162 *Pa. St.* 435, 29 *Atl.* 868; *Phoenix Mills vs. Miller*, 17 *N. Y. Supp.* 158; *McFadden vs. Crawford*, 15 *S. E.* 408, 410; *Meyer vs. Orynski*, 25 *S. W.* 655.

(2) Between the mortgagor and mortgagee the above tests are applied strictly, no exception being made in favor of trade fixtures. *Tottenham vs. Swansea Zinc Ore Co.*, 52 *L. T. N. S.* 738; *Holland vs. Hodgson*, *L. R.* 7 *C. P.* 328; *Pea vs. Pea.* 35 *Ind.* 387; *Wadleigh vs. Janverin*, 41 *N. H.* 503, 77 *Am. Dec.* 780; *Sands vs. Pfieffer*, 10 *Cal.* 258; *Winslow vs. Merchants' Ins. Co.* 45 *Mass* (4 *Metc.*) 310, 38 *Am. Dec.* 368; *Colgrove vs. Dias Santos*, 2 *B. & C.* 76; *Lathrop vs. Blake*, 23 *N. H.* 46; *Miller vs. Plumb*, 6 *Cow.* 665, 16 *Am. Dec.* 456; *Pratt vs. Baker*, 92 *Hun.* 331, 333.

Of course, under this point, all the cases under which mill machinery and fixtures are held to be part of the realty are proper to be considered. *Place vs. Fagg*, 4 *M. & R.* 277; *Pullen's Case*, 1 *Salk.* 368; *Davis vs. Eastham*, 81 *Ky.* 116.

Counsel for complainants presented as part of their argument, in support of the application for an injunction, an opinion of the Honorable W. C. Spruance, as referee, in a

similar case, in which the modern law of fixtures, as applied to manufacturing plants, was defined and discussed*.

*Wm. S. Hilles*, for respondent Mitchell.

The machinery and other property in question was the ordinary machinery used in the business conducted by James G. Knowles, and, as appears from the affidavits, the annexation, where any existed, was such only as to give steadiness to the machinery in order that it might do its appointed work. In such case the machinery is not to be considered fixtures.

The rule as to what are and what are not fixtures, is the same whether the question arises between mortgagor and mortgagee, heir and executor, vendor and vendee. *Notes to Elwes vs. Mawe, Smith L. Cas.* 1460; *Ewell, Fixt.*, 271.

We admit that the fact that annexation was made after the execution of the mortgage is not material in determining whether the property annexed became thereby a part of the realty, except in so far as it may be important in determining the question of the intention with which the annexation was made. 1 *Wash. R. P.* 25; *Jones, Mort., sec.* 436; *Smith L. C.*, 1461; *Ewell, Fixt.*, 281.

In the conflict of authorities it is difficult to lay down the specific rule applicable to all, but on the whole, that of Ewell seems to be the most satisfactory. "That the true criterion of an irremovable fixture consists in the united application of several tests. First, a real or constructive annexation of the article in question to the realty; Second, appropriation or adaptation to the use or purpose of that part of the realty with which it is connected; Third, the intention of the party making the connection to make the article a permanent accession to the freehold, this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation and the policy of the law in relation thereto, the structure and mode of the an-

*As the conclusions are fully set forth by the Chancellor in his opinion, and were adopted by him, and the opinion is printed at large in the Appendix, it is unnecessary to summarize it here.

nexation and the purpose or use for which the annexation has been made." *Ewell, Fixt.* 21, 22.

While in England, in Massachusetts, and possibly in New Hampshire, the courts have held that the class of machinery in question passes to the mortgagee as part of the realty, the contrary rule has been held in very many cases in which the conditions are the same as in this. *Keeler vs. Keeler*, 31 *N. J. Eq.* 181, 190; *McKim vs. Mason*, 3 *Md. Ch.* 186, 198; *Swift vs. Thompson*, 9 *Conn.* 63; *Gaylor vs. Harding*, 37 *Conn.* 508; *Murdock vs. Gifford*, 18 *N. Y.* 28; *Cresson vs. Stout*, 17 *Johnson* 116; *Walker vs. Sherman*, 20 *Wend.* 636; *Vanderpoele vs. Van Allen*, 10 *Barb.* 157; *Fullam vs. Stearns*, 30 *Vt.* 443; *Bartlett vs. Wood*, 32 *Vt.* 372; *Sturgis vs. Warren*, 11 *Vt.* 433; *Tafft vs. Warnick*, 3 *Blackf.* (*Ind.*) 111; *Teaff vs. Hewitt*, 1 *O. St.* 511, 523–543; *Rochereau vs. Bobb*, 27 *La. Ann.* 657; *Graves vs. Pierce*, 53 *Mo.* 429; *Wade vs. Johnson*, 25 *Ga.* 331. *Gale vs. Ward*, 14 *Mass.* 352. This case and the case of *McConnell vs. Blood*, 123 *Mass.* 47, and *Hubbell vs. Bank*, 132 *Mass.* 447, are, in my judgment, irreconcilable with the case of *Hopewell Mills vs. Taunton Savings Bank*, 150 *Mass.*, 519, cited for complainant.

Of the cases here cited, particular attention may be directed to *Walker vs. Sherman* and *Teaff vs. Hewitt*, which contained a full resume of decisions up to that time.

It is also to be noted that the case of *Hutchinson vs. Kay*, 23 *Beav.* 413, and *Hallowell vs. Eastwood*, 6 *Exch.* 295, cannot be reconciled with the case of *Holland vs. Hodgson*, *L. R.* 7 *C. P.* 328, relied upon on the other side.

In those cases it was held that the connection with the motive power by belting does not of itself constitute annexation, and such also is the doctrine of many American cases. *Kendall vs. Hathaway*, 67 *Vt.* 122, 30 *Atl.* 859; *Chase vs. Tacoma Box Co.*, 11 *Wash.* 377, 39 *Pac.* 639; *Rogers vs. Brokaw*, 25 *N. J. Eq.* 496; *Carpenter vs. Walker*, 140 *Mass.* 416.

The nature of property cannot be altered by mere intention of the owner, or any other person. The only question of intention which is pertinent is whether, when the annexation was made, it was the purpose to make the thing annexed

a permanent part of the realty. That alone is the intention which fixes the question of the change in the character of a fixture from personalty to realty. *Rogers vs. Brokaw, supra*; *Wolford vs. Baxter*, 33 *Minn.* 12.

It follows that the naming of the machinery in the mortgage would have no effect if the articles annexed became thereby fixtures. They would be covered by the mortgage without any direct reference to them, and if not annexed no mention of them in the mortgage would make them fixtures, but they would retain their character as personal property and could not be subject to a lien of a mortgage, which was not executed by the formalities required by the law of this State in relation to mortgages of personal property. *Keeler vs. Keeler*, 31 *N. J. Eq.* 181, 193; *Quinby vs. Manhattan Co.*, 9 *C. E. Green*, 260, 267; *Murdock vs. Gifford*, 18 *N. Y.* 28.

The only reported decisions in this State in relation to fixtures concerned attachments to real estate of very different character from this in question here, but they treated the attachment to the freehold in a substantial manner as a material consideration in the questions of what are and what are not fixtures. *Rice vs. Adams*, 4 *Harring.* 332; *Watertown Co. vs. Davis*, 5 *Houst.* 192.

*Edward G. Bradford* and *Samuel W. McCaulley*, for the respondent, William G. Knowles; took no part in the argument, having filed the answer above stated.

.The Chancellor:—

The bill was filed September 14, 1896, by the Equitable Guarantee and Trust Company, trustee, and Mary C. Smith, complainants, as the present holders respectively of two mortgages executed by one of the respondents, James G. Knowles, January 17, 1880. The first held by the Equitable Guraantee and Trust Company, conditioned for the payment of Eighteen Thousand Dollars on February 1, 1884, and the second, held by the said Mary C. Smith, to secure the payment of Six Thousand Dollars on January 1, 1883; both mortgages being due and payable at the time of the commencement of the

suit, with interest on the first from February 1st, 1896, and on the second, from January 1, 1896.

The bill alleges that the mortgage held by the Equitable Guarantee and Trust Company was upon a certain lot or parcel of land, with a woolen mill and buildings thereon erected, situate "in the City of New Castle, aforesaid, in said mortgage more fully described, together with all and singular the improvements, hereditaments and appurtenances whatsoever thereunto belonging, or in any wise appertaining, and all the woolen and cotton machinery, looms, shafting and boilers that might then or thereafter be placed or erected on or within the premises, mill or buildings theretofore mentioned, and which between the parties thereto, their heirs, executors, administrators or assigns, it was thereby expressly agreed, should be considered fixtures attached to and a part and parcel of the real estate thereinbefore described."

The mortgage held by Mary C. Smith is alleged to cover the same property, and both mortgages were duly recorded January 19, 1880, the first at 4 and the second at 4.30 P.M.

Upon certain judgments in the bill fully set forth and described, which were entered or recovered subsequently, to the execution of the said mortgages, three writs of *fieri facias* were issued and under and by virtue of those writs the respondent, Paul Gillis, Sheriff of New Castle County, levied upon and now holds "a large quantity of the machinery, fixtures and other property" alleged in the bill to be embraced in and covered by the said two mortgages, and set out in detail in a schedule attached to the bill, marked "Schedule A."

The bill further alleges that the said Sheriff had advertised the same for public sale at the said mill on September 16, and that: (paragraph 16) "The said machinery, fixtures and other property levied upon, held and threatened to be sold and removed, as aforesaid, in violation of the rights of the said complainants, constitute an important and essential part of the security for said debts of the said complainants, and if the same should be removed from said premises, the value of the remainder of the property covered by the said mortgages will be greatly impaired and diminished and will not be suffi-

cient for the payment of said mortgages or even the first of them."

The prayers of the bill were for subpoena, answer and further relief, and "that the defendants, respectively, their servants, and agents, and all other persons, may be perpetually restrained by injunction of this Honorable Court from selling or removing from the said mortgaged premises any of the machinery, fixtures or property mentioned and described in the schedule annexed to this bill of complaint, marked 'A,' or any other machinery, fixtures or property embraced in or covered by the aforesaid two mortgages, or either of them now in or upon the said premises; and also that a preliminary injunction may be issued restraining the defendants, respectively, their servants and agents, and all other persons in like manner until the further order of the Chancellor."

A rule was issued directed to the said defendants, returnable Tuesday, September 29, requiring them, the said defendants, "to show cause, if any they have, why a preliminary injunction should not issue, restraining them and each of them, their servants and agents, and all other persons, from selling or removing from the aforesaid premises any of the machinery, fixtures or property mentioned or described in the schedule annexed to the said complainant's bill of complaint, marked 'A.'"

A restraining order was also granted pending the hearing and determination of the rule.

At the hearing of the rule for a preliminary injunction answers and affidavits were read, and the law of fixtures, in its relations to the pending cause, discussed with thoroughness and ability. A great number of authorities were cited in the brief of counsel for the respondent, Mitchell, and counsel for the complainants submitted as one of their briefs an opinion written by Honorable W. C. Spruance in 1872, as Referee, in a case which closely resembles the present one.

It may be said of Mr. Spruance's opinion that, although having no authority as a judicial precedent, yet by reason of its clearness of statement, force of reasoning and masterful review and analysis of a multitude of authorities, it was ac-

cepted and acted upon by the Bar of New Castle County generally, with a respect very closely resembling that paid to an authoritative judicial opinion.

My examination of all the authorities submitted in this cause, as well as many others, has led me to approve that opinion as a whole, and to apply its conclusions to the determination of this rule.*

In the present cause, there is no suggestion that the statutes providing for chattel mortgages need be at all considered, as it is admitted that the mortgages in question only cover such portions of the machinery, &c., on the mortgaged premises as may be considered to be a part of the real estate; nor are we concerned with any part of what is commonly called the law of fixtures, except that which relates to questions arising between mortgagor and mortgagee, or the creditors of the former, these being governed by the same rules that govern vendor and vendee or heir and executor, the law concerning fixtures, when the question at issue is between landlord and tenant, for instance, being, of course, radically different.

The affidavits filed and read at the hearing of the rule are necessarily voluminous, inasmuch as they deal with all the articles enumerated in the schedule, but there is no conflict of testimony in matters affecting the determination of the rule, and the experts who have testified agree in everything essential. It is only necessary, therefore, for me to determine the rules to be applied to facts which are practically agreed upon.

It is entirely unnecessary for me to discuss the law of fixtures at length, or "to pass the learning of the subject in review" when it has been so often and so thoroughly sifted in the many leading cases; nor is there any reason for the

---

*In view of the fact that the Chancellor approved the reasoning and adopted the conclusions of the opinion herein quoted, and the referee having been appointed Associate Justice June 11, 1897, it has been considered appropriate to print the opinion in the Appendix, especially as in manuscript it has been for many years much consulted and referred to by members of the Bar of New Castle County.

examination of a great number of cases, most of them merely involving the application of admitted principles to the facts in each particular case, whilst the confusing contradictions resulting from them, arise many times from the endless variety in the way in which different minds regard the details of mechanical appliances and their purposes or mutual relations, or else in the failure on the part of Courts to state with sufficient fullness and precision the principles they apply. The few which I will cite, I consider amply sufficient to sustain my conclusions.

In this State, Chief Justice Comegys expressed briefly and in general terms what is frequently called the prevailing modern rule, in *Watertown Steam Engine Co. vs. Davis*, 5 *Houst.* 192, 214. He there says:

"Whatever may have been the law at one period upon that subject, it is not strictly followed now; and in the case of machinery set upon premises by the owner, as in this case, the question rather is, are the things affixed, set or erected or fastened to the freehold for a temporary or permanent purpose? and, if the purpose is shown to be permanent, as to carry on an employment or business, or if it be an improvement to the property enhancing its value, it should be treated, especially if the adaptation of the means to the end is shown to be appropriate and fit, as being indicative of a design to incorporate the machinery with the freehold and make it part of it, and as such you should regard it. When the attachment of the chattels is thus complete, so that they become part and parcel of the freehold, like the buildings, the fences, and other improvements of a permanent character, the owner of the land himself cannot detach or remove them and change their character back into personalty to the prejudice of a creditor who has a mortgage upon the premises; for to do so, if the value of the lien of the mortgage should be seriously impaired thereby, would be an act of waste, to prevent the commission of which the mortgagee could obtain relief in equity by injunction or by writ out of the Superior Court."

Several years prior to this case, Mr. Spruance, as a referee, chosen by counsel, drew from the cases he reviewed in the opin-

ion above referred to, the following conclusions which he applied to the case he decided.

"It is apparent that the rule as to fixtures, as applied to machinery moved by power of steam or water, has been greatly extended in modern times, both in England and America—but it still remains the settled law, that machinery and implements in a mill of this character, although necessary for its use and enjoyment as such, and although of a character adapted only to the particular business there carried on, if not actually attached in any manner to the building, or to fixed machinery, by belting, or otherwise, do not pass with the freehold.

"In mills of this character all machinery actually affixed to the freehold, although only by screws, or bolts, or connected with it by belts, or bands passes with the realty.

"With the *corpus* of fixed machinery passes all that properly belongs to and forms an integral part of it, although capable of being detached and used elsewhere.

"In case a given article, from its nature, or use, is part of a fixture, so are also all duplicates and different patterns of the same, used for the same purpose, although one only may be used in the same machine at a time. This is in analogy to the case of duplicate keys—and is fully justified by the cases of saws in a saw mill—and rolls in a rolling mill.

"In woolen and cotton mills and probably in most other mills there are certain articles which are necessary for, and are used with fixed machinery as above defined, and are moved by and with it, which are of a more perishable character, are not purchased with such machinery, require more frequent renewal, and are not integral parts of it, but rather belong to the class of findings or supplies, and do not pass with such fixed machinery as part of the freehold.

"Articles whereby admitted fixtures are connected with the freehold, and whereby motion is imparted to the machinery are an essential and integral part of the freehold and pass with it."

It may be observed that attachment to the freehold, by mere gravitation in the case of ponderous articles or ma-

chinery of immense weight is not expressly mentioned by Mr. Spruance, but I think it may be implied.

Chief Justice Gibson, one of the greatest of our American judges, delivered, as far back as 1841, a prophetic opinion, that is a masterpiece, and which I cannot refrain from quoting, at great length, inasmuch as I know of no authority which states with such irresistible force the reasons which have induced, if not compelled, the courts to modify the old rule on the lines he indicates. He says:

"It is true we ruled in an unreported case, (*Chaffee vs. Stewart*) that the spindles and other unattached machinery in a cotton-mill, were personal property for purpose of execution, on the authority of certain decisions to that effect, because we were indisposed to be wise above what is written; but an examination of their foundation would probably have led us to a different conclusion. It is unnecessary to pass the learning of the subject in review, as a clear bird's eye view of it has been spread before the profession by Mr. Justice Cowen in *Walker vs. Sherman*, (20 *Wend.* 636), from which it is evident that no distinctive principle pervades the cases universally, and that the simple criterion of physical attachment is so limited in its range, and so productive of contradiction even in regard to fixtures in dewllings to which it was adapted before England had become a manufacturing country, that it will answer for nothing else. My objection to the conclusion drawn from it in that case, is that the court adhered to the old distinction when the question related to a woollen factory, instead of following out the principle started by Mr. Justice Weston in *Farrar vs. Stackpole*, (6 *Greenleaf* 157), which must, sooner or later, rule every case of the sort. The courts will be drawn to it by its liberality and fitness, while they will be drawn away from the old criterion by its narrowness and want of adaptation to the business and improvements of the age. By the mere force of habit, they have adhered to it in almost all cases after it has ceased to be a guide in any but a few; for nothing but a passive regard for old notions could have led them to treat machinery as personal property when it was palpably an integrant part of a manufactory or a mill,

merely because it might be unscrewed or unstrapped, taken to pieces, and removed without injury to the building. It would be difficult to point out any sort of machinery, however complex in its structure, or by what means soever held in its place, which might not with care and trouble be taken to pieces and removed in the same way, and the greater or less facility with which it could be done, would be too vague a thing to serve for a test. It would allow the stones, hoppers, bolts, meal-chests, skreens, scales, weights, elevators, hopperboys, and running gears of a grist-mill, as well as the hammers and bellows of a forge and parts of many other buildings erected for manufactories, to be put into the class of personal property, when it would be palpably absurd to consider them such. If physical annexation were the criterion in regard to such things, the slightest tack or ligament ought to constitute it; else if we were to get away from it even ever so little, we should have no criterion at all. There are so many fashions, methods, and means of it, and so many degrees of connection between material substances, that there is nothing about which men would more readily differ than whether a thing held by a band or a cleet were permanently annexed to the freehold, or only for a season; and the proof of this is seen in the results of the decisions professedly regulated by it. To avoid discrepance, it would be necessary to hold the slightest fastening to be sufficient, but to exclude from the character of real property, as well every thing constructively attached to it by the nature of the thing, as every thing held to the ground by the attraction of gravitation. Thus cleared of its exceptions, the rule of physical annexation, though at best a narrow one, might furnish a criterion of universal application, though without them, it would make havoc of the cases already decided, and indeed produce the most absurd consequences by stripping houses of their window-shutters and doors, and farms of the houses themselves. When, therefore, we reflect on the necessary exceptions to the rule, as well as the cases of constructive attachment without the semblance of a tack or ligament, we are not surprised at the confusion and embarassment in which we are left by the deci-

sions. The inherent imperfections of the rule required so many exceptions to it, in order to avoid absurdity and injustice in its application, that it has almost ceased to be a rule at all. Being purely artificial, and having no regard to the purposes for which capital is invested, a rigid application of it would be ruinous to the manufacturer. In Pennsylvania, where a statute directs that real estate shall not be sold on execution before the rents, issues and profits, shall have been found by an inquest insufficient to satisfy the debt in seven years, not only might this conservative provision be evaded, but a cotton-spinner, for instance, whose capital is chiefly invested in loose machinery, might be suddenly broken up in the midst of a thriving business, by suffering a creditor to gut his mill of everything which happened not to be spiked and riveted to the walls, and sell its bowels not only separately but piecemeal. A creditor might as well be allowed to sell the works of a clock, wheel by wheel. His interest, it may be said, would forbid him to do so; but in the case of a manufactory, he would often be compelled to sell a part, or to sell many times the worth of the debt, and none but a person entering into the business would purchase either a part or the whole. The sacrifice that would be induced by either course, is incalculable; but that is not all. The bare walls of the building would be comparatively of little value. They might perhaps answer the purposes of a barn; but so might the walls of a dwelling, when deprived of their doors and windows, and why are these considered a part of the dwelling? Simply because it would be unfit for the purposes of a dwelling without them. What, then, is demanded in the case of a building erected for a manufactory, but an application of the same principle? Whether fast or loose, therefore, all the machinery of a manufactory, which is necessary to constitute it, and without which it would not be a manufactory at all, must pass for a part of the freehold. This is no more than an enlargement of the principle of constructive attachment; and it is the principle of *Farrar vs. Stackpole*, glanced at by Lord Mansfield in *Lawton vs. Lawton*, (1 *H. B.* 259 *note*,) who seems to have foreseen its day. I speak not here of questions

between tenant and landlord or remainder man, but of those between vendor and vendee, heir and executor, debtor and execution creditor; and between cotenants of the inheritance. With this limitation, nothing said or done by this court, except its decision in *Chaffee vs. Stewart*, already mentioned, and an *obiter* recognition of an adverse decision, by the judge who delivered the opinion of the court in *Gray vs. Holdship*, (17 *Serg. & Rawle*, 415) will be found to conflict with the principle proposed. Certainly nothing else ever said by us gives countenance to the notion that the rolls of an iron-mill may be siezed and sold as personal property." *Voorhis vs. Freeman*, 2 *Watts & Serg.* 116, 117.

At the present time the overwhelming weight of the authorities which have accumulated since the date of this opinion of Chief Justice Gibson, is in accord with the views expressed by Judge Knowlton in a late Massachusetts case (1890). *Hopewell Mills vs. Taunton Savings Bank*, 150 *Mass.* 519, 521.

So much of the opinion of the Court in that case as seems to bear precisely upon the case before us, is as follows:—

"The character of the property, as real or personal, may be fixed by contract with the owner of the real estate when the article is put in position; but such a contract cannot affect the rights of a mortgagee, or of an innocent purchaser without notice of it. *Hunt vs. Bay State Iron Co.*, 97 *Mass.* 279; *Thompson vs. Vinton*, 121 *Mass,* 139; *Southbridge Savings Bank vs. Exeter Machine Works*, 127 *Mass.* 542, 545; *Case Manuf. Co. vs. Garven*, 45 *Ohio St.* 289. Except in cases where a contract determines the question, a machine placed in a building is found to be real estate or personal property from the external indications which show whether or not it belongs to the building as an article designed to become a part of it, and to be used with it to promote the object for which it was erected, or to which it has been adapted and devoted,—an article intended not to be taken out or used elsewhere, unless by reason of some unexpected change in the use of the building itself. The tendency of the modern cases is to make this a question of what was the intention with which the machine was put in place. *Turner vs. Wentworth*,

119 *Mass.* 459; *Southbridge Savings Bank vs. Exeter Machine Works*, 127 *Mass.* 542, 545; *Allen vs. Mooney*, 130 *Mass.* 155; *Smith Paper Co. vs. Servin*, 130 *Mass.* 511, 513; *Hubbell vs. East Cambridge Bank*, 132 *Mass.* 447; *Maguire vs. Park*, 140 *Mass.* 21; *McRea vs. Central National Bank*, 66 *N. Y.* 489; *Hill vs. National Bank*, 97 *U. S.* 450; *Ottumwa Woolen Mill vs. Hawley*, 44 *Iowa* 57. These cases seem to recognize the true principle on which the decisions should rest, only it should be noted that the intention to be sought is not the undisclosed purpose of the actor, but the intention implied and manifested by his act. It is an intention which settles, not merely his own rights, but the rights of others who have or who may acquire interests in the property. They cannot know his secret purpose, and their rights depend, not upon that, but upon the inferences to be drawn from what is external and visible. In cases of this kind every fact and circumstance should be considered which tends to show what intention, in reference to the relation of the machine to the real estate, is properly imputable to him who put it in position.

"Whether such an article belongs to the real estate is primarily and usually a question of mixed law and fact. *Turner vs. Wentworth*, 119 *Mass.* 459; *Allen vs. Mooney*, 130 *Mass.* 155; *Maguire vs. Park*, 140 Mass. 21; *Carpenter vs. Walker*, 140 *Mass.* 416; *Southbridge Savings Bank vs. Mason*, 147 *Mass.* 500. But the principal facts, when stated, are often such as will permit no other presumption than one of law. It is obvious that in most cases there is no single criterion by which we can decide the question. The nature of the article and the object, the effect, and the mode of its annexation, are all to be considered. In this Commonwealth, it has been said that 'whatever is placed in a building subject to a mortgage, by a mortgagor or those claiming under him, to carry out the purpose for which it was erected, and permanently to increase its value for occupation or use, although it may be removed without injury to itself or the building, becomes part of the realty.' *Southbridge Savings Bank vs. Mason*, 147 *Mass.* 500; *Pierce vs. George*, 108 *Mass.* 78. This

rule generally prevails also in other jurisdictions. *Parsons vs. Copeland*, 38 *Me.* 537; *Holland vs. Hodgson, L. R.* 7 *C. P.* 328; *Longbottom vs. Berry*, *L. R.* 5 *Q. B.* 123; *McRea vs. Central National Bank*, 66 *N. Y.* 489; *Hill vs. National Bank*, 97 *U. S.* 450; *Harlan vs. Harlan*, 15 *Pa. St.* 507; *Delaware, Lackawanna & Western Railroad vs. Oxford Iron Co.,* 9 *Stew.* 452; *Roddy vs. Brick*, 15 *Stew.* 218, 225; *Ottumwa Woolen Mill vs. Hawley*, 44 *Iowa* 57."

The opinion of Mr. Spruance from which I have quoted, expresses with precision and in detail the same conclusions as does this opinion of the Massachusetts Supreme Court, and leaves nothing more to be said with regard to the principles of law to be applied to this cause; for, although counsel for the respondents, in his elaborate brief, contended earnestly against those conclusions, they appear to me to be based upon such sound reasons and to be supported by such an overwhelming weight of authority that I do not deem it necessary to refer specifically to the authorities he cites or analyze his ingenious argument.

In applying these principles to the scheduled articles in the light of the uncontradicted testimony presented at the hearing, I find that the classification of the articles in the schedule and their submission to one or other of the tests already laid down, involves no difficulty whatever.

There is no item in the schedule with reference to which any of the puzzling questions can arise, which, in the application of the rules of law, so frequently cause the distracting contradiction in the cases.

It is manifest that numbers 17, 20, 35, 49 and 50, being spools and side-drawn bobbins, heddles and reeds, belong to the class of findings or supplies, are not parts of any fixed machinery, and are personal property not covered by the mortgages of the realty.

No. 26, an unattached lathe and tools; No. 41, two burling tables, entirely unattached; No. 44, measuring machine on table, entirely unattached; No. 58, cloth dye tub; No. 59, fourteen warp dye tubs, moveable on wheels and unattached; and No. 61, hose, not attached to the pump. These may all

be classed together as articles not being parts of any machinery or in any way attached to the building and in like manner are personal property not covered by the mortgage of the freehold. No. 25, dynamo and lamps. It appears that the circumstances under which these articles were placed in the building, and the intention with which the dynamo was installed, negative, the inference of any intention that they should form a part of the real estate. They are, also admitted to be personal property and not covered by the mortgages.

With regard to the other articles mentioned in the schedule and described in the affidavits, it is not questioned by counsel for the respondents, nor is it open to question, that provided the principles which I have recognized as controlling in this jurisdiction, be applied in this cause, they must all be classed as real fixtures constituting a part of the real estate and subject to the lien of the mortgages held by the complainants.

Application, therefore, of these principles in detail, to each article or class of articles in the schedule would be a useless repetition of what has been done already in a strictly analogous case, and approved by me for the reasons given above, or else merely a superfluous amplification of what is admitted and obvious.

It follows, therefore, that an injunction must be granted restraining the said respondents from selling or removing from the mortgaged premises any of the articles contained in the schedule annexed to the bill of complaint, marked "A," except the following articles, to wit:

Lower Card Room, No. 17, Spools and side-drawing bobbins; Upper card room, No. 20, spools and side-drawing bobbins; Engine room, No. 25, dynamo and lamps; Machine shop, No. 26, lathe and tools; Old weave room, No. 35, 100,000 bobbins; Burling room, No. 41, burling tables unattached; Filling room, No. 44, measuring machine and table; Beaming room, No. 49, 200 sets heddles and, No. 50, 200 reeds; Upper dye room, Nos. 58 and 59, cloth dye tub and 14 warp dye tubs; Upper dye house and fulling room, No. 61, hose.

Let the order be entered accordingly.

The order for a preliminary injunction, in accordance with the opinion of the Chancellor, was entered February 23, 1897, and on the same day the cause was terminated by the entry, with the consent of counsel on both sides, of a final decree making the injunction perpetual; the respondents, William G. Knowles and James E. Mitchell to pay the costs.